IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00175-RN

**Ephraim Smith,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Order**

Plaintiff Ephraim Smith instituted this action on November 4, 2015, to challenge the denial of his application for social security income. Smith claims that the Administrative Law Judge ("ALJ") Richard E. Perlowski erred in failing to evaluate Smith's impairments under Listing 14.09A(1) and in failing to evaluate the medical necessity of his assistive device. Smith also contends that ALJ Perlowski did not properly evaluate the medical opinion evidence and failed to properly consider Smith's inability to afford medical treatment when determining his credibility. Both Smith and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 18, 20.

After reviewing the parties' arguments, the court has determined that ALJ Perlowski's determination is insufficient to permit the court to conduct a meaningful review. Because the court cannot conclude that substantial evidence supports his decision, it finds that remanding the matter to the Commissioner for further consideration is warranted. Therefore, the undersigned magistrate judge grants Smith's motion, denies Colvin's motion, and remands this matter.[1]

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge. 28 U.S.C. § 636(c). D.E. 23.

## I. Background

On November 10, 2011, Smith filed an application for supplemental security income. On November 14, 2011, he filed an application for disability insurance benefits. In both applications, Smith alleged a disability that began on November 1, 2008. After his claims were denied at the initial level and upon reconsideration, Smith appeared before ALJ Perlowski for a hearing to determine whether he was entitled to benefits. ALJ Perlowski determined determined Smith was not entitled to benefits because he was not disabled. Tr. at 13–23.

ALJ Perlowski found that Smith had the following severe impairments: gouty arthritis, obesity, and depression. *Id*. at 15. ALJ Perlowski also found that these impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Perlowski then determined that Smith had the RFC to perform sedentary work with the following environmental and mental restrictions: he can occasionally lift ten pounds and he can frequently lift and carry objects like docket files, ledgers, and small tools; he must avoid concentrated exposure to workplace hazards; and he is limited to simple, routine, repetitive tasks. *Id*. at 17. ALJ Perlowski also concluded that Smith was unable to perform any past relevant work but that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id*. at 21–23. These include order clerk, food checker, and call out operator. *Id*. at 23. Thus, ALJ Perlowski found that Smith was not disabled. *Id*.

After unsuccessfully seeking review by the Appeals Council, Smith commenced this action. D.E. 6.

II.   Analysis

   A.   Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

   B.   Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Medical Background

Smith has suffered from gouty arthritis since 2008. A December 2008 examination revealed tenderness, effusion, and a reduced range of motion in the left knee. Tr. at 390–94. The following month, Smith was taking medication and he reported improvement in his knee pain. *Id*. at 397–98. A follow-up appointment in July 2009 noted full range of motion but also found knee tenderness and a positive patella apprehension test. *Id*. at 385.

Dr. Kia Sewell performed a consultative examination of Smith in March 2011. *Id*. at 379–83. Dr. Sewell's exam noted tenderness, swelling, crepitus, and warmth in the lower extremities. *Id*. at 382. Smith reported that he was not taking medication at that time. *Id*. at 379. Dr. Sewell opined that Smith could not walk for more than five minutes; he would require crutches to walk short or long distances or to traverse uneven terrain; and could only occasionally carry five to ten pounds. *Id*. at 383.

In April 2011, Smith complained of knee pain, for which he reported taking Tylenol. *Id*. at 387. An examination revealed joint effusion, tenderness, and reduced range of motion. *Id*. Later that month, Smith sought an evaluation at Carolina Regional Orthopedics ("CPS"). *Id*. at 404. Treatment notes indicate moderate to severe joint effusion of the right knee and less than full extension. *Id*. Providers recommended medication for his gout. *Id*. Follow-up examinations in June and July of that year continued to show joint effusion and pain associated with the right knee. *Id*. at 403, 405.

Smith reported improvement in his condition in November 2011 and again in January 2012. *Id*. at 409, 414, 432. Dr. Chalak Muhammed performed a consultative examination in February 2012. *Id*. at 424–28. Smith reported pain in his back, shoulders, and lower extremities and swelling in his knees. *Id*. at 424. Smith stated that he was taking his gout medication at this time. *Id*. Dr. Muhammed noted Smith's slow, limping gait. *Id*. at 426. He further observed that Smith used an assistive device to ambulate and, while he could get around the office without it, Dr. Muhammed opined that Smith would benefit from its use for all distances. *Id*. Dr. Muhammed also opined that Smith would have mild to moderate limitations with standing; moderate to severe limitations with walking, lifting, and carrying; could only occasionally bend, stoop, crouch, and squat; and he required an assistive device to ambulate short or long distances and uneven terrain. *Id*. at 428.

An examination with his primary care provider, Rural Health Group in February 2012 revealed left lower extremity pain with a recent ligamentous injury. *Id*. at 440–41. Treatment notes indicate Smith had been compliant with medication but continued to experience pain and tenderness. *Id*. Follow-up treatment records from May 2012 noted that Smith was unable to afford his medication. *Id*. at 449. A treatment note from June 2013 observed that Smith was unable to stand for long periods. *Id*. at 471. In February 2014, records reflect that Smith reported he had obtained medication and that it helped his symptoms, but examination still showed tenderness and swelling of the right knee. *Id*. at 478–79.

State agency physician Dr. Hari Kuncha reviewed Smith's medical records on February 23, 2014. *Id*. at 65–67, 82–85. He assessed a functional capacity for light work with no more than frequent crouching and no concentrated exposure to hazards. *Id*. Another state medical expert, Dr. Dakota Cox, also reviewed Smith's records. *Id*. at 103–06, 122–25. Like Dr. Kuncha,

5

Dr. Cox opined that Smith could perform a limited range of light work and also assessed a limitation for no more than frequent climbing of ladders, ropes, and scaffolds. *Id*. at 103–06, 122–25.

### D.     Listing 14.09A(1)

Smith first argues that ALJ Perlowski erred in evaluating his conditions under Listing 14.09A(1) (inflammatory arthritis). Specifically, he asserts that ALJ Perlowski's discussion of this Listing is insufficient and that a reviewing court could not determine whether substantial evidence supports his finding that the Listing criteria has not been met. The Commissioner submits that Smith cannot meet the Listing criteria because the evidence does not establish "persistent" inflammation. She also asserts that Smith cannot demonstrate an inability to effectively ambulate. The court finds that ALJ Perlowski's analysis is insufficient to permit meaningful review. As the fact-finder in the first instance, it is the ALJ's role, not this court's, to determine what evidence in the record supports or negates a finding that this Listing is met.

#### 1.     Overview of Listing of Impairments

The Listing of Impairments details impairments that are "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairments meet all the criteria of a particular listing, *id.* § 416.925(c)(3), or are medically equivalent to a listing, *id.* § 416.926, the claimant is considered disabled, *id.* § 416.920(d). "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard [for disability more generally]. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (stating that the listings are

designed to weed out only those claimants "whose medical impairments are so severe that it is likely they would be disabled regardless of their vocational background").

The claimant has the burden of demonstrating that his or her impairments meet or medically equal a listed impairment. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981); *see also Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012). As a result, a claimant must present medical findings equal in severity to all the criteria for that listing: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530–31; *see also* 20 C.F.R. § 416.925(c)(3). A diagnosis of a particular condition, by itself, is insufficient to establish that a claimant satisfies a listing's criteria. 20 C.F.R. § 416.925(d); *see also Mecimore v. Astrue*, No. 5:10–CV–64, 2010 WL 7281096, at *5 (W.D.N.C. Dec. 10, 2010) ("Diagnosis of a particular condition or recognition of certain symptoms do not establish disability.").

An ALJ is not required to explicitly identify and discuss every possible listing that may apply to a particular claimant. Instead, the ALJ must provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith*

7

*v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)). Nevertheless, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." *Id.*

### 2. Listing 14.09A(1)

Listing 14.09A requires "persistent inflammation or deformity of (1) one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively[.]" 20 C.F.R. Part 404, Subpt. P, App'x 1 (Jan. 2, 2015). When discussing Listing 14.09 at step three of his analysis, ALJ Perlowski noted: "The claimant's gouty arthritis has not been manifested by persistent symptoms and signs of inflammatory arthritis as defined in Listings 14.09 A to D." Tr. at 16. No further discussion of this Listing is contained in the decision.

In *Radford*, the Court of Appeals addressed the sufficiency of an ALJ's step three finding. 734 F.3d 288. There, the ALJ simply concluded that he "considered, in particular," the impairment listings. *Id.* at 292. Finding this single statement insufficient, the Fourth Circuit observed that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.* at 295 (citations omitted). "[R]emand for . . .additional investigation or explanation" is appropriate when a court is unable to evaluate the record of the basis that underlies the ALJ's ruling. *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

The Court of Appeals recently revisited the *Radford* holding in *Fox v. Colvin*, wherein it determined that the ALJ's analysis at step three was conclusory. 632 F. App'x 750, 755 (4th Cir. 2015). The district court had similarly found that the step three discussion was perfunctory and

8

Case 4:15-cv-00175-RN   Document 25   Filed 01/03/17   Page 8 of 17

offered nothing as to the reasons underlying the ALJ's decision. *Id*. However, the lower court nonetheless stated that it "was able to engage in a substantive, meaningful review of the final decision of the Commission despite the ALJ's error[]" and performed fact-finding to determine if the record supported the ALJ's step three determination. *Id*. Finding this to be error, the Fourth Circuit noted that "[o]ur circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Id.* It concluded that remand to the Commissioner was appropriate. *Id*.

In absence of a more detailed explanation, the inconsistent medical evidence on the criteria of Listing 14.09A(1) precludes meaningful review of ALJ Perlowski's decision. For instance, Drs. Sewell and Muhammed opined that Smith required an assistive device to ambulate, while other medical authorities did not find it was necessary. The record is also unclear as to whether Smith's joint-inflammation persisted during the period he was taking medication. Smith stated that the medication improved his symptoms, but also noted swelling and pain nonetheless persisted despite medication. Tr. at 18, 478–79.

It is the ALJ, not the court, who has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Because ALJ Perlowski's decision fails to provide any explanation as to why Smith's impairments do not meet or equal listing 14.09A(1), his analysis is insufficient. S*ee, e.g.*, *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) ("[I]t is simply unacceptable for the ALJ to adopt one diagnosis over another without addressing the underlying conflict."); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam) (stating that an ALJ has a "duty of explanation" of what informed his decision). Accordingly, remand for further consideration is warranted.

### E. Assistive Device

Smith also contends that ALJ Perlowski erred in failing to determine whether he required the use of an assistive device to walk. The Commissioner maintains that ALJ Perlowski considered the evidence and gave little weight to the medical opinions which found that Smith required assistive devices to ambulate. The court finds that ALJ Perlowski failed to make a finding as to the necessity of an assistive device and, upon remand, the fact-finder shall resolve this issue.

The requirement to use a hand-held assistive device may ... impact ... [an] individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00J4. Thus, an ALJ is required to consider the impact of "medically required" hand-held assistive devices. *Eason v. Astrue*, No. 2:07–CV–30–FL, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008); SSR 96–9, 1996 WL 374185, at *7 (July 2, 1996).

A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96–9p, 1996 WL 374185, at *7. Whether the need for a hand-held assistive device impacts functional capacity depends upon the particular circumstances of the case. For example, an individual who requires a hand-held assistive device in one hand for purposes of walking may be able to use the other hand to perform requirements of many occupations. *Id*. "On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities ... may be significantly eroded." *Id*.

10

Case 4:15-cv-00175-RN   Document 25   Filed 01/03/17   Page 10 of 17

The evidence of record suggests Smith has some difficulties ambulating and may require the use of an assist device. Both Drs. Sewell and Muhammed noted Smith needed this device to ambulate short or long distances and uneven terrain. Tr. at 383, 428. Although he noted the medical evidence reflected that Smith used crutches and a cane, ALJ Perlowski made no finding as to the necessity of Smith's use of an assistive device to ambulate. His decision also does not disclose whether ALJ Perlowski considered the use of an assistive device in determining Smith's RFC. S*ee Hamlin v. Colvin*, C/A No. 8:12–3601–RMG–JDA, 2014 WL 587464, at *13–14 (D.S.C. Jan. 23, 2014) (ALJ improperly failed to discuss whether plaintiff's cane was medically necessary when determining the RFC), *adopted b*y, 2014 WL 588073 (Feb. 14, 2014). In such circumstances, remand is appropriate. *McNair v. Colvin*, No. 8:13-1218-MGL, 2014 WL 2614892, at *18 (D.S.C. June 10, 2014) (remanding because ALJ failed to explain how she resolved conflicting evidence regarding claimant's use of assistive device).

### F. Credibility

Smith next contends that ALJ Perlowski erred in evaluating his credibility. Specifically, he argues that ALJ Perlowski premised his finding that Smith was not fully credible on a conclusion that he was non-complaint with medication. Smith asserts this finding is flawed because it did not determine the reasons for his non-compliance which, Smith maintains, were financial impediments. The Commissioner avers that ALJ Perlowski's credibility finding was proper. She argues that Smith allocated his financial resources to cigarettes and alcohol, and thus an alleged lack of money to afford medication is not credible. The court finds that the credibility determination is not supported by substantial evidence.

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th

Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *2.

In evaluating a claimant's symptoms, the ALJ may consider the effectiveness of medication to alleviate pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). A claimant's compliance with a medication regimen is a relevant factor in evaluating credibility. Under 20 C.F.R. § 404.1530,

> to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.... If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits....

12

Case 4:15-cv-00175-RN   Document 25   Filed 01/03/17   Page 12 of 17

Before a claimant is denied disability benefits because of a failure to follow a prescribed course of treatment, an inquiry must be conducted into the circumstances surrounding the failure. *Burnside v. Apfel*, 223 F.3d 840 (8th Cir. 2000). The burden of proof is on the Commissioner to establish unjustified noncompliance by substantial evidence. *Dickens v. Astrue*, No. 5:10–CV–535–BO, 2011 WL 3269422, at *3 (E.D.N.C. July 28, 2011) (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir. 1985)).

Here, the evidence demonstrates that Smith was unable to afford his medication. Smith testified that he had to stretch his medications to make them last because he lacked the income to afford them. Tr. at 17, 36. He also stated he is unable to obtain the medication because of a lack of money. *Id.* at 17, 38. Smith testified that sometimes he has to choose between buying the gout medication or his high blood pressure medication. *Id.* at 39.

However, ALJ Perlowski found that Smith's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible. *Id.* at 20. He then noted that Smith had been non-compliant with medication and that Smith acknowledged he did not take his medication as prescribed. *Id.* ALJ Perlowski further observed that Smith's gouty arthritis responded well to treatment and acute episodes rapidly resolve with medication. *Id.* at 20–21. However, ALJ Perlowski also noted that Smith's symptoms persisted even when he was taking medication. *Id.* at 17–19. Finally, ALJ Perlowski remarked that Smith did not display a change in motor tone or bulk or in body habitus or appearance that may accompany marked restrictions in activity as Smith alleged. *Id.* at 21. Accordingly, ALJ Perlowski concluded that Smith's allegations of his functional restrictions were not fully credible. *Id.*

Although a reviewing court is to give deference to an ALJ's credibility determination, *see Shively*, 739 F.2d at 989–90 (noting that an ALJ's credibility determination is generally entitled

13

to great deference), ALJ Perlowski's credibility analysis is flawed. ALJ Perlowski's decision made no inquiry into the reasons Smith was not taking his medication as prescribed. Whether the noncompliance was justified has not been determined. Evidence has been presented that Smith could not afford medication, which would render his non-compliance justified and may resurrect his credibility. In such circumstances, the denial of benefits would appear unfounded. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (claimant's inability to afford medication cannot be used as basis for denying benefits); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of patent purposes of the SSA to deny benefits to someone because he is too poor to obtain medical treatment that may help him").

While the Commissioner contends that an inference may be drawn that Smith had resources to afford medication because he allotted funds for cigarettes and alcohol, the court notes that ALJ Perlowski did not remark on Smith's smoking or alcohol consumption as a reason to doubt his inability to afford medication and thus find him not entirely credible. As other well-supported reasons for discounting Smith's credibility are absent, the court cannot conclude that ALJ Perlowski's lack of analysis of Smith's medication non-compliance was harmless. Lacking further discussion as to why Smith was non-compliant with his medication regimen, and whether the non-compliance was justified or not, the court cannot conclude that substantial evidence supports ALJ Perlowski's credibility finding. For these reasons, remand on this issue is warranted.

### G. Medical Opinion Evidence

Finally, Smith argues that ALJ Perlowski erred in considering the medical opinion evidence. He contends that ALJ Perlowski improperly gave little weight to the opinions of Dr. Sewell and Mohammed. The Commissioner asserts that these opinions were properly evaluated

14

and entitled to little weight because they were inconsistent with other evidence. The court finds that ALJ Perlowski's failed to offer sufficient reasons for affording these examiner's opinions little weight warrants remand.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589–90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id*. at 590. If the ALJ determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, Drs. Sewell and Mohammed opined that Smith would benefit from the use of an assistive device. Tr. at 21. ALJ Perlowski discounted these opinions, finding that they were based on one-time examinations of Smith. *Id*. ALJ Perlowski noted that these examiners did not have the benefit of the entire treatment record. *Id*. He further remarked that the record showed that Smith's episodes of gout rapidly improved when his medications were taken. *Id*. ALJ

15

and entitled to little weight because they were inconsistent with other evidence. The court finds that ALJ Perlowski's failed to offer sufficient reasons for affording these examiner's opinions little weight warrants remand.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). While a treating source's opinion usually is afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589–90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id*. at 590. If the ALJ determines a treating source's opinion should not be given controlling weight, then the ALJ must evaluate and weigh the opinion according to the following non-exclusive list: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). The ALJ must state the weight given to a treating source's medical opinion and provide specific reasons for the weight given to those opinions. SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

Here, Drs. Sewell and Mohammed opined that Smith would benefit from the use of an assistive device. Tr. at 21. ALJ Perlowski discounted these opinions, finding that they were based on one-time examinations of Smith. *Id*. ALJ Perlowski noted that these examiners did not have the benefit of the entire treatment record. *Id*. He further remarked that the record showed that Smith's episodes of gout rapidly improved when his medications were taken. *Id*. ALJ

Perlowski also noted that only mild swelling and tenderness were present during Smith's acute episodes of gout, and that the clinical findings were otherwise normal. *Id*. Consequently, he afforded these opinions little weight. *Id*.

The Regulations clearly provide that the length of the treatment relationship is one factor for an ALJ to consider in evaluating the medical evidence. 20 C.F.R. § 404.1527. However, consultative examiners, by their nature, have limited treatment relationship with those they examine. Nonetheless, the SSA refers thousands of cases each year to such consultants to obtain their assessments in deciding disability claims. Discounting such opinions because of the limited treatment relationship would seem to undermine the purpose of such examinations. *See McNeil v. Colvin*, No. 5:14-cv-251-BO, 2015 WL 1815476 , at *2 (E.D.N.C. Apr. 21, 2015) ("The ALJ placed little weight on the CE's opinion because the CE only examined plaintiff twice, and his conclusions were 'not entirely consistent' with the treatment history. Again, the Court does not find this a sufficient explanation for the weight given the opinion, particularly since a CE, as a non-treating physician, typically does not examine a claimant multiple times, and that the CE's opinion was consistent with other record evidence[.]"). Accordingly, affording little weight to the opinions of Drs. Sewell and Mohammed because they were one-time examiners, without more, fails to articulate a sufficient basis to discount these assessments.[2]

Smith also points out that there was only one treatment record, in February 2014, noting mild swelling and tenderness. Other records, he argues, reflect more significant symptoms, including pain, tenderness, reduced range of motion, and swelling that was diffuse, obvious, and

---

[2] Moreover, Drs. Kuncha and Cox, both non-examining reviewers, issued opinions that Smith was capable of a reduced range of light work. By ALJ Perlowski's reasoning, these opinions would also be of limited value because Drs. Kuncha and Cox were one-time consultants. Further, because more weight is given to an examiner than to a non-examiner under §§ 404.1527(d)(1) and 416.927(d)(1), the opinions of Drs. Sewell and Mohammed would generally be entitled to more weight than those of Drs. Kuncha and Cox.

16

severe. Such records support the findings of Drs. Sewell and Mohammed. Additionally, Smith has consistently stated that the medications helped his gout but did not eliminate or relieve all symptoms associated with it. ALJ Perlowski noted as much in his decision. Tr. at 17–19. Even when he was taking the medications, Smith continued to experience pain and swelling. *Id*. at 41, 48–49. Indeed, the record contains evidence of exacerbation and improvement in Smith's symptoms during various periods.

In sum, there is conflicting evidence as to whether Smith's condition presented normal to mild findings when he was taking his medication. Thus, the court is unable to conclude that substantial evidence supports a conclusion that the opinions of Drs. Sewell and Mohammed are inconsistent with medical record demonstrating only minimal findings during periods of medication compliance. As the court cannot conclude that substantial evidence supports ALJ Perlowski's consideration of the medical opinion evidence, remand is appropriate. On remand, further consideration of the medical opinion evidence shall be undertaken.

### III. Conclusion

For the forgoing reasons, the court grants Smith's Motion for Judgment on the Pleadings (D.E. 18), denies Colvin's Motion for Judgment on the Pleadings (D.E. 20), and remands the Commissioner's decision for further consideration consistent with this decision.

Dated: January 3, 2017

_____
Robert T. Numbers, II
United States Magistrate Judge